404 A.2d 518 (1979)
STATE of Delaware
v.
Frank James JOCK, Jr.
Superior Court of Delaware, New Castle County.
Submitted June 20, 1978.
Decided January 5, 1979.
Lucille K. Cirino, Deputy Atty. Gen., Wilmington, for the State of Delaware.
Gerald Z. Berkowitz and Stephen B. Potter, Wilmington, for defendant.
*519 STIFTEL, President Judge.
Defendant Frank James Jock, Jr. moves to dismiss Indictment No. I-77-10-0059 charging him with wilfully and without consent intercepting his wife's telephone conversations from a telephone to which he subscribed at 123 West Park Place, Newark, Delaware. Title to the house was held jointly by Mr. and Ms. Jock. Ms. Jock resided there when the telephone tap was discovered while the defendant resided elsewhere at the time.
Defendant also moves to suppress a statement given to a Newark, Delaware police officer at the Police Department on the day the wiretap device was discovered, September 23, 1977.
In addition, although Shirley Ann Jock initiated the wiretap complaint against her husband, she now moves as an "aggrieved person" to suppress the contents of the unlawful wiretap recordings as evidence in the prosecution of her husband. 11 Del.C. § 1336(t).

I. Interspousal Immunity Does Not Apply In Wiretap Prosecutions.

A. Statutory Construction

Defendant broadly asserts that the doctrine of interspousal immunity bars his prosecution for intercepting the telephone conversations of his wife without her consent. The statute, on the other hand, broadly proscribes the conduct alleged here by the State when committed by "any person" except under circumstances specifically enumerated in the statute.
The language of 11 Del.C. § 1336(b)(1) is clear and comprehensive, stating in pertinent part that:
"(b) Except as otherwise specifically provided in this section or otherwise by law, any person who:
(1) Wilfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire or oral communication;
Shall be guilty of a felony....".
The definition of a "person" as provided in 11 Del.C. § 1336(a)(10) draws no distinction between married and unmarried individuals.[1] Moreover, none of the statute's enumerated *520 exceptions encompasses interspousal wiretapping.
Wiretap statutes, implicating as they do an intrusion into the individual's constitutionally recognized right of privacy, should generally be strictly construed. In the Matter of an In-Progress Trace of a Wire Communication, 76 N.J. 255, 386 A.2d 1295 (1978). The United States Supreme Court has, indeed, given a literal interpretation to the federal wiretap act (Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C.A. §§ 2510-2520) upon which the Delaware statute is patterned. As the Supreme Court noted in United States v. Giordano, 416 U.S. 505, 514, 94 S.Ct. 1820, 1826, 40 L.Ed. 341, 353 (1974), with regard to the federal act,
"... the purpose of the legislation... was effectively to prohibit... all interceptions of oral and wire communications, except those specifically provided for in the Act ...".
As a matter of statutory interpretation, the language of 11 Del.C. § 1336(b)(1), which traces almost verbatim that of its federal counterpart, 18 U.S.C. § 2511(1)(a), is clear on its face.
Since interspousal wiretapping is not specifically exempted from the statute's coverage, it is not immunized from prosecution pursuant to 11 Del.C. § 1336(b)(1). If the State Legislature had intended to create an exception for interspousal wiretapping, it could have specifically included it among the statute's other exceptions. It did not do so and it is not the function of this Court to establish an implied exception to an unambiguous statute. The State Legislature has seen fit to prescribe safeguards against wiretaps in 11 Del.C. § 1336(b)(1) and these safeguards should not be diluted by implying an exception on the basis of marital status.

B. Policy Grounds

The conclusion that no interspousal immunity applies in a wiretap prosecution is supported by strong policy grounds as well as by the literal statutory construction discussed in Part A of this opinion.
First of all, the doctrine of interspousal immunity has traditionally been confined to tort actions and has generally not been recognized in criminal prosecutions. Prosser, Law of Torts, § 122 at 859; Comment, Interspousal Immunity is not a Defense in Criminal Prosecution for Wiretapping, 11 Suffolk Univ.L.Rev. 1366, 1370 (1977). An observation made in connection with the federal wiretapping act is equally applicable to the state statute involved in this case:
"Title III protects the privacy of all parties to an intercepted communication, and the fact that one party to a tapped conversation is the spouse of the defendant should have no bearing whatsoever on the availability of criminal penalties." United States v. Jones, 542 F.2d 661, 672 (6th Cir., 1976), hereinafter cited as "Jones".
Furthermore, the arguments usually marshalled in support of interspousal immunity do not apply to electronic surveillance. The policy of fostering marital harmony is hardly supported by a rule allowing interspousal wiretapping, especially if the evidence gathered is admissible in subsequent divorce proceedings. To recognize interspousal immunity in this context would reward the surreptitious spouse while according the privacy of the targeted spouse less protection than is provided for suspected criminals. Comment, Electronic Surveillance, Neither the Plain Language Nor the Legislative History of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 Justifies An Implied Exception For Interspousal Wiretaps, 11 Georgia L.Rev. 427, 434 (1977).
Additionally, an exception for interspousal wiretapping ignores the privacy interests of unsuspecting third parties; that is, all persons whose conversations with the targeted spouse have been intercepted. Whenever a telephone line is tapped, the privacy of the persons at both ends of the line is invaded and all conversations between them may be overheard. Jones at 670. Recognition *521 that it is not just the privacy of the targeted spouse which is being violated but that of the other party to the conversation as well was noted in Comment, Interspousal Electronic Surveillance Immunity, 7 Tol.L. Rev. 185, 211 (1975):
"Cloaking an eavesdropper with an interspousal electronic surveillance immunity aggravates the situation, resulting in a greater probability that a larger number of innocent people will have their privacy invaded. Such a consequence is the antithesis of Title III's purpose."
It likewise would be the antithesis of 11 Del.C. § 1336's purpose.
Finally, some insight may be gained by examining the closely analogous federal wiretap law, Title III and its accompanying varied interpretations on the issue of interspousal immunity. Several courts have considered the question of whether, as a matter of statutory construction and legislative intent, the federal statute applies to electronic surveillance between married persons. A marked split among the federal circuits is reflected in these opinions.
Some decisions, most noticeably Simpson v. Simpson, 490 F.2d 803 (5th Cir.), cert. denied, 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974), have held that interspousal wiretapping does not fall squarely within the sanctions provided by Title III. The primary basis for the Simpson Court's decision was the absence of extensive discussion in Title III's legislative history relating to interspousal surveillance.
On the other hand, decisions such as United States v. Jones, 542 F.2d 661 (6th Cir. 1976), either reject Simpson's interpretation outright or limit Simpson narrowly to its facts. See, e. g., U. S. v. Rizzo, 583 F.2d 907 (7th Cir. 1978); White v. Weiss, 535 F.2d 1067 (8th Cir. 1976).
In a tightly reasoned and thoroughly developed analysis of Title III's formal legislative history, Senate Report 1097, the Jones opinion concluded that:
"Our review of the legislative history of this section, testimony at congressional hearings, and debates on the floor of Congress, inescapably lead to the conclusion that 18 U.S.C. § 2511(1)(a) establishes a broad prohibition on all private electronic surveillance and that a principal area of congressional concern was electronic surveillance for the purposes of marital litigation." Id., at 669. Emphasis added.
This interpretation would appear to be borne out by an examination of remarks made by Professor Robert Blakey, publicly credited with being the author of Title III. In the Commentary on Specific Standards to the A.B.A. Standards for Electronic Surveillance (approved draft, 1971), Professor Blakey stated that:
"Title III was intended to mean what it says  no surveillance by third parties without a warrant  by cops, spouses, or in business  labor or any other relevant relations." Quoted in Comment, Interspousal Electronic Surveillance Immunity, 7 Tol.L.Rev. 185, 203 at fn. 85 (1975). Emphasis added.
Also of the view that the federal wiretap act was intended to reach private electronic surveillance between spouses is Professor James G. Carr, Reporter for the ABA Task Force on Electronic Surveillance and author of The Law of Electronic Surveillance (1977). According to Professor Carr,
"The state decisions and their federal counterparts which strictly construe Title III and its sanctions have undone some of the damage caused by Simpson and its followers. Furthermore, these cases have fulfilled one of the statute's major purposes: to deter the use of `the most potent invader of privacy _ _ _ in the most private of all human relationships.'" Carr, Interspousal Wiretapping, 5 Search and Seizure Law Report No. 11 at 4 (Nov. 1978).
The language of 11 Del.C. § 1336(b) closely parallels that of the federal wiretap statute, 18 U.S.C. § 2511(1)(a), and so, too, should its underlying policy considerations be analogous, namely, the protection of individual privacy from electronic intrusion. Section 1336(b) contains a blanket prohibition of all electronic surveillance, making "any person" liable "except as otherwise *522 specifically provided". Applying the rule of statutory construction relied upon in the Jones case, that the Legislature meant what it clearly stated, this Court concludes that if the Delaware State Legislature had intended to create an exception for interspousal wiretaps, it would have specifically included it among the statute's other exceptions. Absent an explicit exception, this Court will not imply interspousal immunity in actions instituted pursuant to 11 Del.C. § 1336(b)(1). Defendant's motion to dismiss Indictment No. I-77-10-0059 on the ground of interspousal immunity is, therefore, denied.

II. Suppression of Tapes by An "Aggrieved Person".

Ms. Shirley Ann Jock, who initiated the wiretap complaint against her husband, now moves as an "aggrieved person" to suppress the introduction into evidence of the wiretap recordings in the prosecution of her husband. She relies on 11 Del.C. § 1336(t)(1), which provides in relevant part that:
"(t) Any aggrieved person in any trial, hearing or proceeding in or before any court or other authority of this State or political subdivision thereof may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that:
(1) The communication was unlawfully intercepted;"
As conceded by the State, Ms. Jock is an "aggrieved person" within the meaning of 11 Del.C. § 1336(a)(1), which specifies that an:
"(1) `Aggrieved person' means a person who was a party to any intercepted wire or oral communication or a person against whom the interception was directed."
The State, however, does not concede that Ms. Jock has standing to bring this suppression motion.
As the United States Supreme Court stated in Alderman v. United States, 394 U.S. 165, 171-172, 89 S.Ct. 961, 965, 22 L.Ed.2d 176 (1969):
"The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself ...."
The right to suppression is personal to the one whose right to privacy was violated. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); United States v. Cella, 568 F.2d 1266 (9th Cir. 1978); People v. Warner, 401 Mich. 186, 258 N.W.2d 385 (1977). In this case, since Ms. Jock was the "person against whom the interception was directed", she herself was the victim of an invasion of privacy and thereby has standing to suppress the tapes which record that invasion of privacy.
The State recommends the alternative of partial suppression, by which the voice of Ms. Jock would be deleted from the tapes. It contends that, consequently, Ms. Jock would lack standing to contest the use of tapes which do not include her voice. Such an analysis is specious. Editing Ms. Jock's voice out of the tapes would hardly minimize the invasion of her privacy because the recorded conversations in the case are such that defendant's responses often repeat or at least refer to the preceding comments of his wife. Therefore, the contents of Ms. Jock's end of the dialogue are implicitly revealed. Since the intrusion on Ms. Jock's privacy would be roughly the same regardless of whether or not her voice were deleted from the tapes, the State's offer is gratuitous and has no bearing on Ms. Jock's standing to suppress.
A second preliminary issue raised by Ms. Jock's motion to suppress is whether the fact that she pressed charges in this case amounts to a waiver of her right to suppress the wiretap recordings as evidence in the ensuing criminal prosecution.
The essence of a waiver is the voluntary and intentional relinquishment of a known right, claim or privilege. Mere negligence, oversight, or thoughtlessness does not suffice. It must generally be shown by the party claiming a waiver that the person against whom the waiver is asserted had knowledge of the existence of *523 his or her rights or of all the material facts upon which they depended. 28 Am.Jur.2d, "Estoppel and Waiver," § 158.
The State has failed to show that Ms. Jock, by pressing charges in this case, thereby intentionally relinquished her known right to have the tapes suppressed. There is no evidence that Ms. Jock was even aware that the tapes would be seized by the police and possibly be played in open Court. Likewise, no evidence has been presented that Ms. Jock knew, at the time she called the police, that she had a right to suppress the contents of unlawfully intercepted conversations. Since the requisite elements of a knowing and intelligent waiver have not been demonstrated by the State, Ms. Jock is not held to have relinquished her privacy right to suppress the contents of the tapes.
The protection of individual privacy rights underlies 11 Del.C. § 1336(t)(1)'s provision for the suppression of unlawfully intercepted communications by "aggrieved persons". Similarly, in the federal context, Title III contains a strict exclusionary rule in 18 U.S.C. § 2515, which operates in conjunction with § 2518(10)(a) to give persons who were targets of an interception the right to move to suppress such interceptions. As noted in United States v. Cianfrani, 573 F.2d 835 (3rd Cir. 1978):
"The legislative history of Title III makes it clear, as do the elaborate authorization and disclosure provisions of the statute itself, that `the protection of privacy was an overriding congressional concern'.... Similarly, the complex and overlapping provisions are strong evidence that Congress intended to regulate strictly [the] disclosure of intercepted communications, limiting the public revelation of even interceptions obtained in accordance with the Act to certain narrowly defined circumstances." Id. at 855-856.
The motivation to protect privacy envisions a strict approach to the exclusion of surveillance and surveillance-derived evidence. Electronic Surveillance, ABA Standards Relating to the Administration of Criminal Justice, Evidentiary Sanctions, Standard 2-2.3, at 5.
These policy considerations are equally applicable in the context of 11 Del.C. § 1336(t)(1)'s suppression provisions. In that regard, the communications over the phone at 123 West Park Place, Newark, on September 23, 1977, were unlawfully intercepted and recorded without the consent of the target of the tap. As discussed earlier, no interspousal immunity applies to electronic surveillance and thus, when viewed against 11 Del.C. § 1336(b)(1)'s blanket prohibition against wiretapping, the wire interception involved in this case was unlawful. Therefore, the "aggrieved party's" motion to suppress the contents of the unlawfully intercepted wire communication pursuant to 11 Del.C. § 1336(t)(1) is hereby granted.
Although in the context of a prosecution for wiretapping, it may seem anomalous to suppress the tapes in question on the grounds that they contain unlawfully intercepted communications, this does not, in fact, create the paradoxical result of precluding a criminal prosecution. It is the "interception" of communications which is prohibited by 11 Del.C. § 1336(b)(1), not the memorialization of those communications. As observed in connection with the parallel federal statute:
"The legislative history of the Act, as well as its applicable provisions, indicate that interception alone is intended to be considered a crime; divulgence of the communication is not necessary." 29 Am. Jur., "Proof of Facts, Wiretapping", § 8 at 599.
This Court hereby grants Ms. Jock's motion, as an "aggrieved person" to suppress the entire contents of the unlawfully intercepted wire communications.

III. Suppression of Defendant's Statement.

The defendant moves to suppress a statement given by him to a Newark police officer on September 23, 1977, the day he was arrested for the wiretap charge. While Mr. Jock was at Magistrate's Court No. 10 in order to secure a warrant against his *524 wife for an alleged burglary of his business office, he was informed that a warrant against him alleging wiretapping had been signed by Ms. Jock. Mr. Jock then drove to the Newark Police Department in his personal care for the dual purpose of lodging a formal complaint against Ms. Jock for the alleged burglary as well as his own processing on the wiretap charge.
Upon his arrival at the police station, Mr. Jock was processed; that is, fingerprinted and photographed in connection with his wiretap arrest. Before he was sent back to Magistrate's Court for arraignment, Mr. Jock was told he could lodge a formal complaint at that time against his wife for the alleged burglary if he so desired. Upon his request to do so, Mr. Jock was directed to the Detective Division where he was interviewed on this matter by a different police officer. At that time, in response to the Detective's question, "Can you tell me the facts leading up to the burglary?", Mr. Jock responded in relevant part, "I have tapped my home phone for several reasons, and I played one of the tapes back ...".
Mr. Jock moves to suppress this statement on the grounds that he was not apprised of his Miranda rights at any time following his arrest on the wiretapping charge.
The relevant inquiry is whether Mr. Jock was the subject of custodial interrogation at the time he made the statement so as to render it inadmissible without prior Miranda warnings.
While Mr. Jock had been in custody during his processing on the wiretap arrest, he chose to remain at the Newark Police Station for his own purposes, that is, to lodge a complaint against Ms. Jock. Therefore, at the time of his statement, he was acting as a complaining witness in a matter independent from his arrest and was not in custody in the Miranda sense.
Nor did the Detective's interview with Mr. Jock amount to interrogation. In response to innocuous questioning about the alleged burglary of Mr. Jock's business office, his non-responsive admission regarding his tapping of his home phone was completely voluntary and unsolicited by the police officer.
The lack of Miranda warnings in this context has no bearing on the admissibility of his statement and therefore, Mr. Jock's motion to suppress is denied.
NOTES
[1] Section 1336(a)(10) states that:

"Person" means a human being who has been born and is alive, and where appropriate, a public or private corporation, an unincorporated association, a partnership, a government or a governmental instrumentality and includes any officer or employee of the State or a political subdivision thereof.