IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,

      v.

RICARDO CASTRO,

      Defendant.

I.D. No. 1809014319 & 1812000589

Submitted: July 12, 2019
Decided: July 24, 2019

## ORDER

Defendant's Motion to Suppress Wiretap Evidence.
*Denied.*

Gregory R. Babowal, Esquire of the Department of Justice, Dover, Delaware; attorney for the State.

Brian J. Chapman, Esquire of the Law Office of Brian J. Chapman, Wilmington, Delaware and Robert Gamburg, Esquire (*pro hac vice*) of Philadelphia, Pennsylvania; attorneys for the Defendant.

WITHAM, R.J.

Upon consideration of the parties' briefs and the record of the case, it appears to the Court that:

1. Defendant Ricardo Castro (hereinafter "Defendant") moves to suppress all evidence obtained as a result of a wiretap of cellular telephone number 302-358-0876 (hereinafter "0876"). The Defendant's motion primarily focuses on the lack of probable cause to support the wiretap application for the 0876 number and the State's alleged failure to satisfy 11 *Del. C.* § 2407(c)(1)(c), which is known in Delaware as the "necessity requirement."

2. The charges against the Defendant arise in the context of an extensive police investigation into an alleged drug trafficking syndicate (hereinafter "the Organization") in Kent County, Delaware. Defendant allegedly supplied the Organization which allegedly specialized in the distribution of cocaine and marijuana.[1] The Organization is also accused of operations involving other illicit substances.

3. The wiretap application that the Defendant challenges was for his own prepaid Verizon Wireless cellular phone and accompanying phone number. Law enforcement investigators obtained an order authorizing the wiretap of 0876 on June 4, 2018.

4. Before the issuing Judge approved the wiretap application, he considered the State's "Affidavit in Support of Application for Interception of Wire

---

[1] D. Mot. to Suppress Ex. A (hereinafter "D. Ex. A") at 11, ¶ 3.

2

Communications." The affidavit recounts the police investigation into the Organization and contains lengthy descriptions of the normal investigative efforts that were:

(1) Taken and had failed prior to the application for the inception order;

(2) Reasonably appeared likely to fail if they were tried; or

(3) Were too dangerous to employ.

This was communicated by the affiants to the issuing Judge through:

(1) Physical surveillance;

(2) Search warrants;

(3) Use of Attorney General Subpoenas;

(4) Confidential informants (hereinafter "CIs");

(5) Undercover law enforcement activity;

(6) Interview of suspects;

(7) Arrest of suspects;

(8) Pen registers and telephone tolls;

(9) Examination of discarded trash;

(10) Use of pole cameras;

(11) Use of GPS device; and

(12) Controlled purchases.[2]

The affiants are Detective Thomas Lamon of the Delaware State Police, Detective

---

[2] D. Ex. A at 18-28.

Matthew Krogh of the Dover Police Department, and Special Agent Matthew Toth of the United States Drug Enforcement Administration. The affidavit comprises thirty-two (32) pages.

5. The affidavit in support of a wiretap application must contain a full and complete statement that explains why a wiretap is necessary to the investigation.[3] Therefore, the Court's attention is directed to those previously mentioned portions of the affidavit that discusses any previous implementation of and future impracticalities associated with normal investigative techniques. The following is a summary of these pertinent sections:

(1) *Physical Surveillance*: The affiants state that although physical surveillance has been attempted and has been useful in uncovering the operational activities of the Organization, along with identifying some of its members, it has not succeeded in gathering sufficient evidence of criminal activity and will not conclusively establish the elements of a criminal violation. Furthermore, the affiants state that physical surveillance fails to establish all locations related to the offenses and/or additional information regarding the coordination of the Organization's controlled substance delivery operations.

(2) *Search Warrants*: The affiants state that the use of search warrants will not provide law enforcement with sufficient evidence to determine the full scope of the drug organization, because of the limited amount of places law

---

[3] 11 *Del. C.* § 2407(a)(1)-(6).

4

enforcement knows to search. Searches on those places are also unlikely to reveal the total scope of the Organization's operations because the Organization stores its drugs in multiple locations throughout Kent and New Castle counties. Simultaneous searches would also not be feasible and would further risk Organization members learning of law enforcement's efforts and destroying evidence before it is discovered. In addition, since law enforcement does not know the location of all premises where illegal activities take place, other members of the drug organization would be alerted of the investigation if law enforcement began conducting searches of some or all of the known residences.

(3) *Attorney General Subpoenas*: The affiants state that they spoke with multiple Delaware Deputy Attorney Generals, including the Deputy Attorney General for Kent County, and based on that Deputy Attorney General's experience, the use of Attorney General subpoenas would be unsuccessful because the alleged conspirators would likely invoke their Fifth Amendment privilege against self-incrimination. Additionally, it would not be prudent to seek immunity for the targeted individuals because immunity may foreclose prosecution against members of the Organization who may be the most culpable. The subpoenas may also compromise the investigation further by alerting other conspirators regarding the investigation's existence and result in negative consequences.

(4) *Confidential Informants*: The affiants state that CIs have been used in the

investigation, but that they have provided only limited information with respect to the following: the Organization's specific activities; the names and roles of all of the members of the Organization; the sources of the drugs; the methods of concealing the proceeds of the sales of drugs; and the details of specific drug transactions. The affiants further state that it is unlikely that members of the Organization would share this information with CIs, or that any CIs would be able to purchase illegal drugs directly from the Defendant because he only deals with trusted and/or known regular customers and further limits information only to those on a "need to know" basis.[4]

(5) *Undercover Law Enforcement Activity*: The affiants state undercover officers have been unable to infiltrate the Organization due to its close and secretive nature, and that even if they could infiltrate it, the undercover officers would not be able to infiltrate the Organization at a level high enough to learn details about its activities and/or its members, particularly the Defendant.

(6) *Interview of Suspects*: The affiants state that interviewing suspected members of the Organization will produce insufficient information about the Organization's members and activities; that the suspects would likely lie to law enforcement; that the suspects would likely invoke their Fifth Amendment privilege against self-incrimination; and that interviewing suspects would alert other members of the Organization to the investigation, which would cause

---

[4] D. Ex. A at 22.

those other members to be more cautious, which would in all probability, jeopardize the investigation.

(7) *Arrest of Suspects*: The affiants state that even if one of the targeted members of the investigation was arrested, law enforcement would be unable to learn the identities of all members of the Organization and those individuals would escape prosecution.

(8) *Pen Register and Telephone Tolls*: The affiants state that a pen register, trap trace device, and telephone tolls have been utilized in the investigation of the Organization to verify communications regarding the target phone number, but that these methods are insufficient because they do not record the identity of the parties to the conversations, nor the substance of the conversations.

(9) *Examination of Discarded Trash*: The affiants state that law enforcement cannot collect discarded trash from the Defendant's residence because he has installed surveillance cameras around his residence. If law enforcement is viewed by those surveillance cameras or other residents, the investigation would be compromised. Furthermore, the affiants state that in their experience drug dealers do not typically discard information regarding their drug activities in trash containers and, assuming they did, any information that discarded trash may reveal would insufficiently reveal the scope of the Organization, nor prove any unlawful activity.

(10) *Use of Pole Cameras*: The affiants state that pole cameras have been used in the investigation of the Organization, but cannot be utilized pertaining to the

7

Defendant because there are no appropriate public locations, i.e. telephone or electrical poles around or near the Defendant's residence that would support the installation of the device. The affiants also state that even if they could install a pole camera, it would likely be futile because those involved in illicit drug activity typically seek out such devices, oftentimes destroying or otherwise disabling them if discovered.

(11) *Use of GPS Tracking Device*: The affiants state that even if a search warrant was approved to utilize a GPS device, the device would only provide the whereabouts of the subject being tracked. It would not reveal why the targeted individual was at the location or how the location is related to the Organization. Additionally, the GPS tracker would track the targeted individual only, whom, in this case, is suspected of employing others to distribute drugs in his stead.

(12) *Controlled Purchases*: The affiants state that controlled purchases have been utilized in the investigation of the Organization, but have produced limited results due to the intricate compartmentalization of the Organization. These controlled purchases only provided a "snap shot" of the inner workings of the Organization[5] and not the entire Organization as a whole.

6. On May 20, 2019, the Defendant moved for an order to suppress evidence related to all wire interceptions in which he was involved concerning the 0876

---

[5] D. Ex. A at 28.

cellular telephone number. The State replied, in opposition, on June 3, 2019. Oral arguments were scheduled for July 12, 2019. At the hearing, both parties agreed that the Court should decide the matter based on their written submissions. As such, the Court agreed to do so and reserved its decision to further consider the matter.

7. The Defendant's Motion to Suppress is based on two arguments.[6] He first asserts that the affiants' affidavit failed to establish probable cause that a wiretap of 0876 would reveal any evidence of a crime.[7] The Defendant next contends that the State failed to satisfy the necessity requirement, codified in 11 *Del. C.* § 2407(a)(3) because affiants' affidavit relied on boilerplate language and further failed to show that normal investigative procedures were unlikely to succeed or would be too dangerous.[8]

8. Unsurprisingly, the State opposes the Defendant's contentions and asserts that the affiants' affidavit satisfied both probable cause and the necessity requirements.

9. In a Motion to Suppress challenging the validity of a search warrant, it is

---

[6] The Court wishes to note that the Defendant does not appear to argue his status as an "aggrieved person" pursuant to 11 *Del. C.* § 2401(1). Pursuant to section 2401(1), an "aggrieved person" means a person who was a party to any intercepted wire, oral or electronic communication or a person against whom the interception was directed. Here, it is clear that the Defendant has standing to challenge the wire tap as an aggrieved person.

[7] D. Mot. to Suppress (hereinafter "D. Mot.") at 1, 4.

[8] D. Mot. at 1, 6 (Defendant cites 11 *Del. C.* § 2407(c)(1)(c) in support, but this section of the wiretap statute echoes section 2407(a)(3).).

the Defendant that bears the burden of proving that the challenged search or seizure was unlawful[9] by the preponderance of the evidence.[10] The issuing Judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. The duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for ... conclud[ing] that probable cause existed."[11] Those same basic principles apply to the review of warrants authorizing wiretaps.

10. The reviewing Judge's determination of probable cause should be paid great deference by this Court, which is, of course, the reviewing court.[12] An order authorizing the interception of wire, oral, or electric communications may be granted upon a determination that:

(1) There is probable cause to believe that a person has committed, is committing, or is about to commit an enumerated crime;

(2) There is probable cause to believe that communications concerning the

---

[9] *State v. Felton*, 2016 WL 3568523, at *12 (Del. Super. June 22, 2016) (citing *State v. Sisson*, 883 A.2d 868, 875 (Del. Super. 2005)).

[10] *Id.* (citing *State v. Darling*, 2007 WL 1784185, at *1 (Del. Super. June 8, 2007), as corrected (July, 2007)).

[11] *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (citations omitted)).

[12] *Id.*

enumerated offense will be obtained through the wire intercept;

(3) Normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if attempted or would be too dangerous; and

(4) There is probable cause to believe that the telephone number from which communications are being intercepted are being used in the commission of an enumerated offense or are used by an individual engaged in criminal activity.[13]

11. In *State v. Perry*, this Court discussed how to determine if a wiretap warrant application complies with the aforementioned necessity requirement:

When reviewing the application and accompanying affidavits for compliance with these sections, it is enough if the affidavit explains the prospective or retroactive failure of several investigative techniques that reasonably suggest themselves. The government's burden of establishing compliance is not great. Compliance is tested in a practical and common sense fashion and subject to the broad discretion of the judge to whom the wiretap application is made. The purpose of the "necessity" requirement is not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques. Each case is examined on its own facts and factors. To be considered are the type of crime

---

[13] 11 *Del. C.* § 2407(c)(1)(a)-(d).

involved and the relationships between the suspected defendants. Finally, a wiretap order should not be invalidated simply because defense lawyers are able to suggest post factum some investigative technique that might have been used and was not.[14]

In order to show that traditional methods would not likely succeed, "an affidavit must allege specific circumstances that render normal investigative techniques particularly ineffective."[15]

12. Wiretap statutes implicate an intrusion into a person's constitutionally recognized right to privacy and thus the Court strictly interprets them.[16] As stated previously, a reading of the Delaware wiretap statute reveals that a reviewing judge must find normal investigative procedures have failed, or reasonably appear unlikely to succeed, or are too dangerous, An affidavit that explains the prospective or retroactive failure of several reasonable investigative techniques will suffice.[17] However, "[b]oilerplate assertions *that are unsupported by specific facts relevant to the particular circumstances* of [the] case are not sufficient."[18]

---

[14] *State v. Perry*, 599 A.2d 759, 764 (Del. Super. 1990) (citations and internal quotation marks omitted).

[15] *Felton*, 2016 WL 3568523, at *13 (citing *U.S. v. Landeros–Lopez*, 718 F.Supp.2d 1058, 1065 (D. Ariz. 2010) (citing *US. v. Blackmon*, 273 F.3d 1204, 1210 (9th Cir. 2001))).

[16] *Id.* (citing *State v. Jock*, 404 A.2d 518, 520 (Del. Super. 1979)).

[17] *Id.* (citing *US. v. Hyde*, 574 F.2d 856, 867 (5th Cir.1978)).

[18] *Id.* (citing *Landeros–Lopez*, 718 F.Supp.2d at 1065 (citing *Blackmon*, 273 F.3d at 1210)).

13. Probable cause exists "when the officer possesses information which would warrant a reasonable man in believing that a crime has been committed."[19] The finding of probable cause does not require proof beyond a reasonable doubt, or even that the defendant's guilt is more likely than not. "Probable cause is established if the totality of the circumstances contained in the affidavit indicates a probability of criminal activity and that evidence of the criminal activity could be obtained through the use of electronic surveillance."[20] An affidavit of probable cause is considered in a flexible and practical manner, and as a whole rather than on the basis of its separate components.[21]

14. The Court will not invalidate an issuing Judge's finding of probable cause on a hyper-technical, rather than a common sense, interpretation of the warrant affidavit."[22]

15. Regarding probable cause in the present case, the Defendant asserts probable cause does not exist to support the authorized wiretap application. He specifically contends that the evidence against him, telephone calls and text messages placed and/or made on May 3, 2018 and May 11, 2018 from one of the other targeted

---

[19] *State v. Maxwell*, 624 A.2d 926, 929–30 (Del. 1993).

[20] *Felton*, 2016 WL 3568523, at *12 (citing *US. v. Ambrosio*, 898 F.Supp. 177, 181 (S.D.N.Y.1995)).

[21] *Jensen*, 482 A.2d at 111-12.

[22] *Id.* at 111 (citing *US. v. Ventresca*, 380 U.S. 102, 109 (1965)).

individuals to the 0876 number, is insufficient to establish probable cause.[23] The Defendant also asserts that a text message exchange between the 0876 number and a targeted individual on June 1, 2018 is also insufficient to establish probable cause. The June 1, 2018 text exchange was documented as follows:

> Targeted Individual: "Yo Gucci"
>
> Defendant: "Yep at work"
>
> Targeted Individual: "Ok Fam got to Holla at you"
>
> Targeted Individual: "Pick it up like you said"[24]

Defendant asserts that this "scant evidence" is insufficient to further establish probable cause.[25] However, the Court disagrees.

16. The Court finds these communications, including the June 1, 2018 text message exchange, are enough to establish probable cause. In this case, the affiants' affidavit sufficiently recites the affiants' experience and training, and the Court notes that all affiants have past experience in wiretap investigations and are familiar with coded language that drug dealers utilize. The Court is entitled, and so chooses, to give "considerable weight" to these affiants' conclusions based on their stated experience and training.[26] Moreover, the affiants' affidavit provides specific information that

---

[23] D. Mot. at ¶ 12.

[24] D. Ex. A at 14-15, ¶¶ 14-16.

[25] D. Mot. at ¶ 15.

[26] *U.S. v. Kaplan*, 526 Fed.Appx. 208, 212 (3d Cir. 2013).

further establishes probable cause that: (1) the Defendant is currently committing drug crimes, and (2) the communications regarding these drug crimes will be intercepted on the 0876 phone line. Furthermore, a pen register and telephone tolls confirmed that the 0876 line had high usage with another targeted individual in the investigation.

17.  After considering the affidavit as a whole, in a flexible and practical manner, the Court finds that the issuing Judge properly found probable cause at the time the wiretap order was issued.

18.  Next, the Court will address the Defendant's argument regarding the lack of necessity demonstrated by the State. This Court reviews the question of whether a full and complete statement of necessity for a wiretap was made in the application *de novo*.[27] Once it is determined that the statement was made, the Court will review the magistrate's determination of necessity for an abuse of discretion.[28]

19.  The Defendant attacks the affidavit's use of boilerplate language and argues that the language can be recycled and used indiscriminately against any drug dealing ring. In support he cites *United States v. Blackmon*, a Ninth Circuit Court of Appeals case, and asserts that a wiretap application cannot stand when it makes "only general allegations that would be true in most narcotics investigations" as well as "boilerplate conclusions that merely describe inherent limitations of normal

---

[27] *State v. Brooks*, 2013 WL 4051049, at *3 (citing *United States v. Phillips*, 959 F.2d 1187, 1189 (3d Cir. 1992)).

[28] *Id.*

15

investigative procedures."[29]

20. However, the Court distinguishes *Blackmon*, which is not binding on this Court, from the present case. In *Blackmon*, the affidavit was found to be boilerplate and generic because the particularized information was purged from the affidavit because of material misstatements and omissions.[30] There, the defendant was indicted following a narcotics investigation that utilized wiretaps and investigated multiple suspects.[31] Prior to trial, the defendant moved to suppress any wire-tap related evidence alleging that the application failed to satisfy the necessity requirement, and also sought a hearing pursuant to *Franks v. Delaware*.[32] The District Court for the Central District of California denied both motions and then convicted the defendant.[33] On appeal, the United States Court of Appeals for the Ninth Circuit found that, pursuant to *Franks*, the affidavit, in the necessity portion, contained misstatements

---

[29] D. Mot. at ¶ 24; *see also Blackmon*, 273 F.3d at 1210.

[30] *Blackmon*, 273 F.3d at 1209.

[31] *Id.* at 1206.

[32] *Id.*; *see also Franks v. Delaware*, 438 U.S. 154 (1978) ((holding that where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided).

[33] *Id.*

in reckless disregard for the truth.[34] Therefore, the court held that those statements should be excluded from the affidavit in determining probable cause and necessity.[35]

21. The Ninth Circuit then considered the remaining boilerplate repetitive language when determining "whether upon review of this application, purged of its misstatements, a reasonable issuing judge would find that the application nonetheless conforms to the [necessity] requirements.[36] It was at that point, the *Blackmon* court held that the purged affidavit, on its face, failed to meet the full and complete statement requirement for a wiretap application.[37]

22. Here, the Defendant's case is unlike *Blackmon*. Specifically, the 0876 affidavit is not subject to a *Franks* hearing, nor has any information been removed, nor is it foreseeable that any information will be purged from the affidavit due to misstatements in reckless disregard for the truth.

23. More applicable to the Defendant's case, is *U.S. v. Heilman*,[38] which the Court finds instructive. In *Heilman*, the defendants were charged and convicted of drug trafficking related charges. During the investigation of the defendant's drug organization, law enforcement sought and obtained wiretaps for two phones used by

---

[34] *Id.*

[35] *Id.*

[36] *Blackmon*, 273 F.3d at 1206.

[37] *Id.*

[38] *U.S. v. Heilman*, 377 Fed.Appx. 157 (3d Cir. 2010)

17

one defendant and one phone used by a second defendant. Those two defendants contended that "the government failed to make a facial showing, within the four corners of the affidavits, to establish necessity for three separate wiretaps."[39] The defendants moved to suppress evidence from the wiretaps arguing that the application contained boilerplate recitations and conclusory language about the limitations of certain investigative techniques.[40] The defendants further contended that normal investigative tools, including surveillance and informants, have been successful.

24. The District Court in *Heilman* denied defendants' motions to suppress finding that necessity had been appropriately established.[41] In doing so, the Third Circuit recognized that "[t]he Government does not have a 'great' burden in proving necessity, because it need not prove to a certainty that normal investigative techniques will not succeed, but rather it needs only to show that such techniques reasonably appear to be unlikely to succeed if tried. The affidavit need only establish a "factual predicate" for why other investigative techniques are not sufficient."[42]

25. The *Heilman* court further held that "the issuing court should take into account affirmations based on the specialized training and experience of law

---

[39] *Id.* at 185.

[40] *Heilman*, 377 Fed.Appx. at 186.

[41] *Id.*

[42] *Id.* at 185-86 (citations omitted).

18

enforcement officers."[43] Additionally, the Third Circuit stated "[t]he fact that law enforcement had some success using physical surveillance does not render a wiretap per se unnecessary" and that the law did not require law enforcement "to prove that a certain investigative approach is useless to pursue a wiretap; it is only obligated to give a full explanation as to why a technique is impractical under the circumstances and that it would be unreasonable to require pursuit of those avenues.[44]

26. In this case, as in *Heilman*, it is clear from the record that the 0876 affidavit explained how normal investigative techniques would not be sufficient to fully locate all of the Organization's co-conspirators, stash locations, among other objectives of the investigation. The affiants' affidavit further supplied a full and complete statement as to whether or not other investigative procedures have been tried and failed, why such procedures reasonably appear to be unlikely to succeed if tried, or why such procedures would be too dangerous if tried. The affiants described the difficulty in conducting physical surveillance, and other methods of investigation, on the Defendant, including operations of the Organization, and how physical surveillance, for instance, although valuable, was not enough to identify all of the members and associates of the Organization as well as the stash locations and suppliers. Furthermore, the affiants' affidavit clearly explains why interviews of suspects, arrests, search warrants and other stated investigative techniques would not

---

[43] *Id.* at 186-87.

[44] *Heilman*, 377 Fed.Appx. at 187.

19

be sufficient. The affidavit details what methods were undertaken and what they yielded, as well as adequately explains those methods' limitations. For these reasons, the Court finds that the necessity for interception has been sufficiently justified.

27. Accordingly, after a four corners review of the respective affidavit, the Court finds the intercepted communications of 0876 were lawfully acquired and the Defendant's Motion to Suppress evidence obtained as a result of these intercepted communications is **DENIED**.

**IT IS SO ORDERED.**

Hon. William L. Witham, Jr.
Resident Judge

WLW/dmh
oc:    Prothonotary
cc:    Counsel

20