IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,        :

                              :      I.D. No. 1811017297

    v.                       :

                              :

JERMAINE K. McCOVE,    :

                              :

      Defendant.         :

Submitted: July 12, 2019
Decided: July 25, 2019

## ORDER

Defendant's Motion to Suppress Wiretap Evidence
*Denied.*

Gregory R. Babowal, Esquire of the Department of Justice, Dover, Delaware; attorney for the State.

Jonathan Layton, Esquire of Gonser & Gonser, P.A., Wilmington, Delaware; attorney for Defendant.

WITHAM, R.J.

Upon consideration of the parties' briefs and the record of the case, it appears to the Court that:

1. Defendant Jermaine McCove (hereinafter "Defendant") moves to suppress all evidence obtained as a result of a wiretap of cellular telephone number 917-686-6479 (hereinafter "6479"). The Defendant's motion focuses on the lack of probable cause to support the wiretap application for 6479 and the State's alleged failure to satisfy the "necessity requirement," codified by 11 *Del. C.* § 2407(c)(1)(c).

2. The charges against the Defendant arise in the context of an extensive police investigation into an alleged drug trafficking syndicate (hereinafter "the Organization") in Kent County. The wiretap application that the Defendant challenges was for a prepaid AT&T cellular telephone owned by co-defendant Lamont K. McCove (hereinafter "co-defendant L. McCove").

3. Law enforcement obtained an order authorizing the wiretap of 6479 on April 5, 2018 that helped law enforcement recover text messages that were allegedly exchanged between the Defendant and co-defendant L. McCove. These text messages form the basis of the charges against the Defendant.[1]

4. Before the issuing Judge approved the wiretap application for 6479, he considered the State's "Affidavit in Support of Application for Interception of Wire Communications." The affidavit recounts the police investigation into the Organization. Additionally, the affidavit contains lengthy descriptions of the normal

---

[1] *See* Indictment, *State v. Jermaine K. McCove*, No. 1811017297 (Dec. 3, 2018) (hereinafter "D. Ex. E").

investigative efforts that were taken and had failed prior to the application for the inception order, reasonably appeared likely to fail if they were to be tried, or were too dangerous to employ. This was communicated by the affiants to the issuing judge through:

(1) physical surveillance;

(2) search warrants;

(3) use of Attorney General Subpoenas;

(4) confidential informants (hereinafter "CIs");

(5) undercover law enforcement activity;

(6) interview of suspects;

(7) arrest of suspects;

(8) pen registers and telephone tolls;

(9) examination of discarded trash;

(10) use of pole cameras; and

(11) use of GPS device.[2]

The affiants are Detective Thomas Lamon of the Delaware State Police, Detective Matthew Krogh of the Dover Police Department, and Special Agent Matthew Toth of the United States Drug Enforcement Administration. The affidavit is thirty-six (36) pages in length.

5. The affidavit in support of a wiretap application must contain a full and

---

[2] D. Ex. B at 21-31.

3

complete statement that explains why a wiretap is necessary to the investigation.[3] Therefore, the Court's attention is directed to those previously mentioned portions of the affidavit that discuss any previous implementation of and future impracticalities associated with normal investigative techniques. The following is a summary of these pertinent sections:

(1) *Physical Surveillance*: The affiants state that although physical surveillance has been attempted and has been useful in uncovering the operational activities and some members of the Organization, it has not succeeded in gathering sufficient evidence of criminal activity and will not conclusively establish the elements of a criminal violation. The affiants state that physical surveillance will fail to establish all locations related to the offenses or additional information regarding the coordination of controlled substance delivery. This is, in part, because the neighborhood, Capitol Park, has only one ingress/egress and law enforcement's constant transport through that point, using unknown vehicles, would arouse the resident's suspicions, many of whom may be connected with the Organization.

(2) *Search Warrants*: The affiants state that the use of search warrants will not provide law enforcement with sufficient evidence to determine the full scope of the Organization because of the limited amount of places law enforcement knows to search. Searches on those places would also unlikely reveal the total scope of the Organization's operations because the Organization stores its

---

[3] 11 *Del. C. § 2407(a)(1)-(6).

drugs in multiple locations throughout Kent County. Simultaneous searches would also not be feasible, and further risk Organization members learning of law enforcement's efforts and destroying evidence before it is discovered. In addition, since law enforcement does not know the location of all of the premises where illegal activities take place, other members of the Organization would be alerted of the investigation if law enforcement began conducting searches of some or all of the known residences.

(3) *Attorney General Subpoenas*: The affiants state that they spoke with multiple Delaware Deputy Attorney Generals, including the Deputy Attorney General for Kent County, and that, based on that Deputy Attorney General's experience, the use of Attorney General subpoenas would be unsuccessful because the alleged conspirators would likely invoke their Fifth Amendment privilege against self-incrimination. Additionally, it would not be prudent to seek immunity for the targeted individuals because immunity may foreclose prosecution against members of the Organization who may be the most culpable. The subpoenas may also compromise the investigation further by alerting other conspirators regarding the investigation's existence.

(4) *Confidential Informants*: The affiants state that CIs have been used in the investigation, but that they have provided only limited information with respect to the following: the specific activities of the Organization; the names and roles of all of the members of the drug organization; the sources of the drugs; the methods of concealing the proceeds of the sales of drugs; and the details

of specific drug transactions. The affiants further state that it is unlikely that members of the Organization would share this information with CIs, or that any CIs would be able to purchase illegal drugs directly from co-defendant L. McCove because he only deals with trusted and/or known regular customers and further limits information only to those on a "need to know" basis.

(5) *Undercover Law Enforcement Activity*: The affiants state that undercover officers have been unable to infiltrate the Organization due to its close and secretive nature, including the fact that co-defendant L. McCove does not allow new and unknown persons into the Organization. Affiants also state that even if they could place an undercover officer within the Organization, the undercover officer would not be able to infiltrate the Organization at a level high enough to learn details about the Organization's activities and all its members, particularly co-defendant L. McCove.

(6) *Interview of Suspects*: The affiants state that interviewing suspected members of the Organization will produce insufficient information about the Organization's members and activities; that the suspects would likely lie to law enforcement; that they would likely invoke their Fifth Amendment privilege against self-incrimination; and that interviewing suspects would alert other members of the investigation which would cause them to be more cautious and jeopardize the investigation.

(7) *Arrest of Suspects*: The affiants state that even if one of the targeted members of the investigation was arrested, law enforcement would be unable

to learn the identities of all members of the Organization and those individuals would escape prosecution. Furthermore, other associates of the Organization would take the place of the arrested targeted subjects, including co-defendant L. McCove.

(8) *Pen Register and Telephone Tolls*: The affiants state that a pen register, trap trace device, and telephone tolls have been used in the investigation to verify communications between the target phone number, but that they are insufficient because they do not record the identity of the parties to the conversations, nor the substance of the conversations.

(9) *Examination of Discarded Trash*: The affiants state that law enforcement cannot collect discarded trash from co-defendant L. McCove's residence because he lives on a large plot of land in a rural area and law enforcement's presence would be discovered if they made any attempts to conduct a trash pull. Furthermore, the affiants state that in their experience, drug dealers do not typically discard information about their drug activities in personal trash containers and, assuming they did, any information that discarded trash may reveal, whether recovered from personal trash containers or by a trash pull, would insufficiently reveal the scope of the drug organization, nor prove any unlawful activity.

(10) *Use of Pole Cameras*: The affiants state that pole cameras have been used in the investigation, but cannot be utilized in regards to the co-defendant L. McCove because there are no appropriate public locations, i.e. a telephone or

7

electrical poles, around his residence that would support the installation of the device. Affiants also state that even if they could install a pole camera, it would likely prove folly because those involved in illicit drug activity typically look for such devices, oftentimes destroying or disabling the device if discovered. (11) *Use of GPS Tracking Device*: The affiants state that even if a search warrant was approved to utilize a GPS device, the device would only provide the whereabouts of the subject being tracked. It would not reveal why the targeted individual was at the location or how the location is related to the Organization. Additionally, the GPS tracker would track the targeted individual only, whom in this case, is suspected of employing others to distribute drugs in his stead. Furthermore, affiants state that because co-defendant L. McCove typically uses rental vehicles, rather than his own personally registered vehicles, it makes it difficult to pinpoint what vehicle he will be utilizing at any given time.

6. On July 8, 2019, the Defendant moved for an order to suppress evidence related to all wire interceptions in which he was involved concerning the 6479 cellular telephone number. The State replied, in opposition, on July 10, 2019. Oral arguments were held on July 12, 2019. At the hearing, both parties agreed that the Court should decide the matter based on their written submissions. As such, the Court agreed to do so and took the matter under advisement.

7. The Defendant's motion is based on two assertions.[4] The first claim is that the affiants' affidavit failed to establish probable cause that a wiretap of 6479 would reveal evidence of a crime.[5] Second, the Defendant claims that the necessity requirement, codified in 11 *Del. C. § 2407*(a)(3), was not satisfied because affiant's affidavit relied on boilerplate language, general declarations, and conclusory statements and failed to show that normal investigative procedures were unlikely to succeed or would be too dangerous.[6]

8. In a Motion to Suppress challenging the validity of a search warrant, the Defendant bears the burden of proving that the challenged search or seizure was unlawful.[7] The burden is preponderance of the evidence.[8] The issuing Judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or

---

[4] The Court notes that there was no argument made by either party regarding the Defendant's "aggrieved person" status. Pursuant to 11 *Del. C. § 2401*(1), an "aggrieved person" means a person who was a party to any intercepted wire, oral or electronic communication or a person against whom the interception was directed. Here, it appears clear to the Court that the Defendant has standing to challenge the wire tap as an aggrieved person.

[5] D. Mot. to Suppress at ¶¶ 12-16.

[6] D. Mot. to Suppress at ¶¶12, 17-18.

[7] *State v. Felton*, 2016 WL 3568523, at *12 (Del. Super. June 22, 2016) (citing *State v. Sisson*, 883 A.2d 868, 875 (Del. Super. 2005)).

[8] *Id.* (citing *State v. Darling*, 2007 WL 1784185, at *1 (Del. Super. June 8, 2007), as corrected (July, 2007)).

evidence of a crime will be found in a particular place. The duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for ... conclud[ing] that probable cause existed."[9] Those same basic principles apply to the review of warrants authorizing wiretaps. The reviewing Judge's "determination of probable cause should be paid great deference by reviewing courts."[10]

9. An order authorizing the interception of wire, oral, or electric communications may be granted upon a determination that:

(1) There is probable cause to believe that a person has committed, is committing, or is about to commit an enumerated crime;

(2) There is probable cause to believe that communications concerning the enumerated offense will be obtained through the wire intercept;

(3) Normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if attempted or would be too dangerous; and

(4) There is probable cause to believe that the telephone number from which communications are being intercepted are being used in the commission of an enumerated offense or are used by an individual engaged in criminal activity.[11]

10. In *State v. Perry*, this Court discussed how to determine if a wiretap warrant application complies with the aforementioned necessity requirement:

---

[9] *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (citations omitted)).

[10] *Id.*

[11] 11 *Del. C.* § 2407(c)(1)(a)-(d).

When reviewing the application and accompanying affidavits for compliance with these sections, it is enough if the affidavit explains the prospective or retroactive failure of several investigative techniques that reasonably suggest themselves. The government's burden of establishing compliance is not great. Compliance is tested in a practical and common sense fashion and subject to the broad discretion of the judge to whom the wiretap application is made. The purpose of the "necessity" requirement is not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques. Each case is examined on its own facts and the factors to be considered are the type of crime involved and the relationships between the suspected defendants. Finally, a wiretap order should not be invalidated simply because defense lawyers are able to suggest post factum some investigative technique that might have been used and was not.[12]

In order to show that traditional methods would not likely succeed, "an affidavit must allege specific circumstances that render normal investigative techniques particularly ineffective."[13]

---

[12] *State v. Perry*, 599 A.2d 759, 764 (Del. Super. 1990) (citations and internal quotation marks omitted).

[13] *Felton*, 2016 WL 3568523, at *13 (citing *U.S. v. Landeros–Lopez*, 718 F.Supp.2d 1058, 1065 (D. Ariz. 2010) (citing *US. v. Blackmon*, 273 F.3d 1204, 1210 (9th Cir. 2001))).

11

11. Wiretap statutes implicate an intrusion into a person's constitutionally recognized right to privacy and thus should be strictly interpreted.[14]A reading of the wiretap statute reveals that a reviewing judge must find normal investigative procedures have failed, or reasonably appear unlikely to succeed, or are too dangerous, and an affidavit that explains the prospective or retroactive failure of several reasonable investigative techniques will suffice.[15] However, "[b]oilerplate assertions *that are unsupported by specific facts relevant to the particular circumstances* of [the] case are not sufficient."[16]

12. Probable cause exists "when the officer possesses information which would warrant a reasonable man in believing that a crime has been committed."[17] The finding of probable cause does not require proof beyond a reasonable doubt, or even that the defendant's guilt is more likely than not. "Probable cause is established if the totality of the circumstances contained in the affidavit indicates a probability of criminal activity and that evidence of the criminal activity could be obtained through the use of electronic surveillance."[18] Although probable cause to issue a *wiretap order* must exist at the time the order is sought, its existence is "determined

---

[14] *Id.* (citing *State v. Jock*, 404 A.2d 518, 520 (Del. Super. 1979)).

[15] *Id.* (citing *US. v. Hyde*, 574 F.2d 856, 867 (5th Cir.1978)).

[16] *Id.* (citing *Landeros–Lopez*, 718 F.Supp.2d at 1065 (citing *Blackmon*, 273 F.3d at 1210)).

[17] *State v. Maxwell*, 624 A.2d 926, 929–30 (Del.1993).

[18] *Felton*, 2016 WL 3568523, at *12 (citing *US. v. Ambrosio*, 898 F.Supp. 177, 181 (S.D.N.Y.1995)).

on an ad hoc basis and depends upon the nature of the criminal activity alleged."[19] An affidavit of probable cause will be considered in a flexible and practical manner, and will be considered as a whole rather than on the basis of its separate components.[20]

13. An issuing Judge's finding of probable cause "will not be invalidated by a hyper-technical, rather than a common sense, interpretation of the warrant affidavit."[21]

14. Regarding probable cause, the Defendant asserts that it does not exist to support the wiretap application. He specifically appears to contend that (1) any reference to the affiants' "training and experience" coupled with the conclusory, speculative, overreaching, and rather hollow statements contained in the [a]ffadavit[]" do not amount to probable cause.[22] The Court disagrees.

15. The Court agrees with the State that these communications with the 6479 number are enough to establish probable cause. Here, the affiants' affidavit sufficiently recites all affiants' experience and training, where they all have experience in wiretap investigations. And despite the Defendant's assertions to the contrary, the Court is entitled to give "considerable weight" to these affiants'

---

[19] *Blount v. State*, 511 A.2d 1030, 1033 (Del. 1986) (quoting *Jensen v. State*, 482 A.2d 105, 111 (Del. 1984)).

[20] *Jensen*, 482 A.2d at 111-12.

[21] *Id.* at 111 (citing *US. v. Ventresca*, 380 U.S. 102, 109 (1965)).

[22] D. Mot. to Suppress at ¶¶ 15-16.

conclusions based on their experience and training.[23]

16. Moreover, the affidavit provides specific information establishing probable cause in that (1) co-defendant L. McCove is currently committing drug crimes, and (2) that communications regarding these crimes will be intercepted on the 6479 phone line. Furthermore, it also appears that a pen register and telephone tolls confirmed that the 6479 line had high usage with another targeted individual of the investigation.

17. After considering the affidavit in a flexible and practical manner, and considering it as a whole, the Court finds that the issuing Judge properly found probable cause at the time the wiretap order was issued on number 6479.

18. Next, the Court is required to analyze the necessity of the wiretaps. This Court reviews the question of whether a full and complete statement of necessity for a wiretap was made in the application *de novo*.[24] Once it is determined that the statement was made, the Court will review the magistrate's determination of necessity for an abuse of discretion.[25]

19. The Defendant attacks the affidavit's use of general declarations, conclusory statements, and boilerplate language that he asserts can be recycled and used indiscriminately against any drug dealing ring. He cites *United States v.*

---

[23] *U.S. v. Kaplan*, 526 Fed.Appx. 208, 212 (3d Cir. 2013).

[24] *State v. Brooks*, 2013 WL 4051049, at *3 (citing *United States v. Phillips*, 959 F.2d 1187, 1189 (3d Cir.1992)).

[25] *Id.*

*Blackmon* in support and contends a wiretap application cannot stand when it makes "only general allegations that would be true in most narcotics investigations" as well as "boilerplate conclusions that merely describe inherent limitations of normal investigative procedures."[26]

20. However, the Court distinguishes *Blackmon*, which is not binding on this Court, from the present case. In *Blackmon*, the affidavit was found to be boilerplate and generic because the particularized information was purged from the affidavit because of material misstatements and omissions.[27] There, that defendant was indicted following a narcotics investigation that utilized wiretaps and investigated multiple suspects.[28] Prior to trial, the defendant moved to suppress any wire-tap related evidence, alleging that the application failed to satisfy the necessity requirement, and also sought a hearing pursuant to *Franks v. Delaware*.[29] The District Court for the Central District of California denied both and then convicted the defendant.[30] On appeal, the United States Court of Appeals for the Ninth Circuit found that, pursuant to *Franks*,[31] the affidavit, in the necessity portion, contained misstatements in reckless

---

[26] D. Mot. to Suppress at ¶ 17; *see also Blackmon*, 273 F.3d at 1210.

[27] *Blackmon*, 273 F.3d at 1209.

[28] *Id.* at 1206.

[29] *Id.*

[30] *Id.*

[31] *Franks v. Delaware*, 438 U.S. 154 (1978) (holding that where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless

disregard for the truth.[32] Therefore, the Ninth Circuit held that those statements should be excluded from the affidavit in determining probable cause and necessity.[33] The *Blackmon* court then considered only the remaining boilerplate and repetitive language when determining "whether upon review of this application, purged of its misstatements, a reasonable issuing judge would find that the application nonetheless conforms to the [necessity] requirements.[34] The Ninth Circuit held that the purged affidavit, on its face, failed to meet the full and complete statement requirement for a wiretap application.[35]

21. Here, unlike *Blackmon*, the 6479 affidavit is not subject to a *Franks* hearing and no information has been, nor is it foreseeable that any information will be, purged from the affidavit because of any misstatements in reckless disregard for the truth.

---

disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided).

[32] *Blackmon*, 273 F.3d at 1209.

[33] *Id.*

[34] *Id.*

[35] *Id.*

22. As it pertains to the Defendant's case, the Court finds *U.S. v. Heilman*[36] instructive. In *Heilman*, the defendants were charged and convicted of drug trafficking related charges as members of a extensive drug organization. During the investigation of the drug organization, law enforcement sought and obtained wiretaps for two phones used by one defendant and one phone used by a second defendant. Those two defendants contended that "the government failed to make a facial showing, within the four corners of the affidavits, to establish necessity for three separate wiretaps."[37] The defendants moved to suppress evidence from the wiretaps, arguing that the application contained boilerplate recitations and conclusory language about the limitations of certain investigative techniques.[38] The defendants further contended that normal investigative tools, including surveillance and informants, had been successful.

23. The District Court in *Heilman* denied defendants' motions to suppress, finding that necessity had been appropriately established.[39] On appeal, the Third Circuit recognized that "[t]he Government does not have a 'great' burden in proving necessity, because it need not prove to a certainty that normal investigative techniques will not succeed, but rather it needs only to show that such techniques

---

[36] *U.S. v. Heilman*, 377 Fed.Appx. 157 (3d Cir. 2010)

[37] *Heilman*, 377 Fed.Appx. at 185.

[38] *Id.* at 186.

[39] *Id.*

17

reasonably appear to be unlikely to succeed if tried. The affidavit need only establish a "factual predicate" for why other investigative techniques are not sufficient."[40]

24. Furthermore, the *Heilman* court held that "the issuing court should take into account affirmations based on the specialized training and experience of law enforcement officers" and that the District Court did not abuse its discretion by finding necessity.[41] Additionally, the Third Circuit stated "[t]he fact that law enforcement had some success using physical surveillance does not render a wiretap per se unnecessary" and that the law did not require law enforcement "to prove that a certain investigative approach is useless to pursue a wiretap; it is only obligated to give a full explanation as to why a technique is impractical under the circumstances and that it would be unreasonable to require pursuit of those avenues.[42]

25. In this case, as in *Heilman*, it is clear from the record that the 6479 affidavit explained how normal investigative techniques would not be sufficient to locate co-conspirators, stash locations, among other objectives of the investigation. The affiants further supplied a full and complete statement as to whether or not other investigative procedures have been tried and failed, why such procedures reasonably appear to be unlikely to succeed if tried, or why such procedures would be too dangerous if tried. The affiants described the difficulty in conducting physical surveillance, and other methods of investigation, on co-defendant L. McCove,

---

[40] *Id.* at 185-86 (citations omitted).

[41] *Heilman*, 377 Fed.Appx. at 186-87.

[42] *Id.* at 187.

including operations of the Organization, and how physical surveillance, for instance, although valuable, was not enough to identify all of the members and associates of the Organization as well as the stash locations and suppliers. Furthermore, the affiants clearly explain as to why interviews of suspects, arrests, search warrants and other investigative techniques would not be sufficient because they would alert the targets and impair the investigation. The affidavit details what methods were undertaken and what they yielded, as well as adequately explains those methods' limitations. For these reasons, the Court finds that the necessity for interception has been sufficiently justified as well.

26. Accordingly, after a four corners review of the respective affidavit, the Court finds the intercepted communications of 6479 were lawfully acquired and the Defendant's Motion to Suppress evidence obtained as a result of these intercepted communications is **DENIED**.

**IT IS SO ORDERED.**

_____

Hon. William L. Witham, Jr.
Resident Judge

WLW/dmh
oc:     Prothonotary
cc:     Gregory R. Babowal, Esquire
        Jonathan Layton, Esquire

19